IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

PLANO DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 4 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. ABBY KRISTEN JOHNSON, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| *Plaintiff,* | ) ) | **COMPLAINT** |
| *v.* | ) ) | **FILED UNDER SEAL** |
| PLANNED PARENTHOOD OF HOUSTON AND SOUTHEAST TEXAS, INC., | ) ) ) ) | |
| *Defendant.* | ) ) | |

## COMPLAINT (FILED UNDER SEAL)

ABBY KRISTEN JOHNSON, acting as Plaintiff and Relator on behalf of the governments of the United States of America and the State of Texas, states and alleges against Planned Parenthood of Houston and Southeast Texas, Inc., as follows:

## INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United States of America and the State of Texas, arising from false statements and claims for Medicaid payments made and presented by Planned Parenthood of Houston and Southeast Texas, Inc. and/or its agents, employees, and co-conspirators (herein "Planned Parenthood") in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.,* as amended (the "Act") and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001 et seq.  The violations include various and repeated false, fraudulent, and/or ineligible claims for Medicaid

reimbursements submitted to billing agencies of the United States and/or the State of Texas by Planned Parenthood for reimbursement from the Texas Women's Health Program ("WHP") for products and services not reimbursable and/or for failing to report such practices and failing to make, upon discovery of such practices, reimbursement to the government of amounts received by Planned Parenthood. Such false, fraudulent and/or ineligible claims, which Planned Parenthood knew were false, exaggerated and/or overstated when made, have, since at least 2007 and continuing to date, been submitted by Planned Parenthood to the United States Government and/or the State of Texas government. In violation of its duty to report known errors resulting in unwarranted overpayments from federal and state billing agencies, Planned Parenthood concealed such errors from government agents in order to keep funds to which Planned Parenthood was not entitled.

2.     The Act provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the government for payment or approval is liable for civil penalty up to $11,000 for each such claim submitted or paid, plus three times the amount of the damages sustained by the government. Liability attaches both when a defendant knowingly seeks payment that is unwarranted from the government and when false records or statements are knowingly created or caused to be used to conceal, avoid, or decrease an obligation to pay or transmit money to the government. The Act allows any person having information regarding a false or fraudulent claim against the government to bring an action for himself or herself (in this case, the Relator) and for the government and to share in any recovery. The complaint is filed under seal for sixty (60) days (without service on the Defendant during that period) to enable the government to conduct its own investigation without the defendant's knowledge and to determine whether to join the action.

## PARTIES

3.      Plaintiff and Relator Abby Kristen Johnson (herein "Ms. Johnson") is a resident of College Station, Texas, and former employee of Planned Parenthood.  Ms. Johnson brings this action for violations of 31 U.S.C. §§ 3717 *et seq.,* on behalf of herself and the United States Government pursuant to 31 U.S.C. § 3730(b)(1).  Ms. Johnson also brings this action on behalf of herself and the State of Texas pursuant to the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §§ 36.001 et seq.  Ms. Johnson has personal knowledge of the false records, statements and/or claims presented to the United States Government and/or the State of Texas government by and for Planned Parenthood and of Planned Parenthood's fraudulent cost and billing reporting practices.

4.      Planned Parenthood is a 501(c)(3) exempt, Texas non-profit corporation with its principal offices located at 3601 Fannin Street, Houston, Texas 77004.  Planned Parenthood is engaged in providing reproductive health care services and education to the general public, including, but not limited to distributing contraceptive devices; testing for and treating sexually transmitted diseases; testing and counseling for unplanned pregnancies; and providing of a full range of abortion services.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

6.      This Court has personal jurisdiction over Planned Parenthood pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be

3

found, resides, transacts business or in which any act proscribed by section 3729 occurred." Section 3732(a) also authorizes nationwide service of process. Planned Parenthood, during the relevant time period resided in, and/or transacted business in the Eastern District of Texas, Plano Division.

7.    This Court has pendant or supplemental jurisdiction over the claims brought on behalf of the State of Texas, which claims are brought pursuant to the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE ANN. §§ 36.001 *et seq.,* and 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

8.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Planned Parenthood can be found in, resides in, and/or transacts business in the Eastern District of Texas, and because some of the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

## **GENERAL ALLEGATIONS**

9.    Ms. Johnson has been associated with or employed by Planned Parenthood since September 2001. From September 2007 to October 2009, Ms. Johnson was employed by Planned Parenthood as the Health Center Director of Planned Parenthood's Bryan Health Center at 4112 E. 29th Street, Ste. 100, Bryan, TX 77802.

10.    Prior to September 2007, Ms. Johnson was employed by Planned Parenthood as Community Services Specialist for the Bryan Health Center. Her responsibilities included public affairs, public outreach, health education, and fundraising.

11.    Prior to this position as Community Services Specialist, beginning in April 2005, Ms. Johnson was employed by Planned Parenthood as a Health Center Assistant in the Bryan Health

Center. Her responsibilities included interviewing patients, patient intake, lab work, patient testing, assisting examinations, and performing billing functions.

12.    From September 2007 to October 2009, as Health Center Director, Ms. Johnson was responsible for managing the center's budget and for hiring, training and supervising a staff of approximately twelve employees in the center's three programs:  family planning, abortion services and dysplasia services.  Ms. Johnson was responsible for ensuring that all appropriate medical protocols and procedures were properly followed and that all patient files, records and laboratory result logs were maintained in a professional manner by auditing patient charts prepared by her staff.  In this regard, Ms. Johnson was responsible for ensuring that detailed information for determining patient eligibility for services was obtained and documented.  Ms. Johnson's duties additionally included responsibility for input of data into the centrally-based accounting and record system.   Ms. Johnson had access to patient charts and records, which included patient billing records, case history, donations, and other pertinent information.

13.    Patient billing records were maintained on Planned Parenthood's computer network.  In accordance with the directions given to her by her supervisor, Dyann Santos, Ms. Johnson was responsible for overseeing data entry for every visit by each patient which data described, for billing purposes, the services rendered and included any pills, drugs, medications and/or items prescribed and supplied to each patient.  Ms. Johnson was able to view all patient billing information, including insurance information, charges and payments, since it was included in the patient's computer records.  The balance shown on a particular patient's chart would reflect whether the requested payments had been approved.  In this manner and based upon other observations and contacts, Ms. Johnson became aware of the billing practices of Planned Parenthood as described herein.

14.     The actual billing for services and products to the delegate Medicaid agency, Texas Medicaid and Healthcare Partnership (TMHP), was handled by the Planned Parenthood's central office at 3601 Fannin, Houston, Texas 77004, which was responsible for preparing and transmitting the claim forms/invoices based upon patient billing information prepared by and forwarded to it from Planned Parenthood's various centers, including the center managed by Ms. Johnson.

15.     In the Houston area, Planned Parenthood operates the Dickinson Health Center, Prevention Park Health Center (the flagship center, currently located on Fannin Street), FM 1960 Health Center, Greenspoint Health Center, Rosenberg Health Center, Southwest Health Center, and Stafford Health Center. In addition Planned Parenthood operates the Bryan, Texas, Health Center, Lufkin, Texas, Health Center, and Huntsville, Texas, Health Center.

16.     All of Planned Parenthood's centers provide "family planning services" to Texas residents. Each of the centers, including the Bryan, Texas, Health Center, operates under the direction and control of Planned Parenthood. The control exercised by Planned Parenthood includes the establishment and enforcement of policy and financial and accounting procedures and practices, as well as the hiring and termination of employees.

17.     Planned Parenthood is and was, at all times relevant hereto, a party to and subject to agreements between it and the United States Government and the State of Texas government pursuant to which Planned Parenthood contracted to provide services and products, including prescription medications and contraceptives, to program-eligible patients. The aforementioned programs include, but are not limited to, Medicaid Title XIX and Title XX programs and the Texas Women's Health Program ("WHP").

6

18.     At all times relevant hereto, in exchange for the aforementioned services and products, Planned Parenthood received money in the form of direct payments or reimbursements from the United States Government and/or the State of Texas government.

## Medicaid Program

19.     Medicaid is a jointly funded federal-state health care program, established in Texas in 1967 and administered by the Texas Health and Human Services Commission (HHSC). In federal fiscal year (FFY) 2007, the federal government funded 60.78 percent of the cost of the Texas Medicaid Program while the state funded the other 39.22 percent.

20.     The Medicaid program is designed to enable delivery of medical services and supplies to people in need who do not have adequate resources to obtain these services and supplies. Eligible recipients are those at and below the federal poverty guideline level.  Women and children account for the largest percentage of the Medicaid population; in state fiscal year 2007, 57 percent of the Medicaid population was female and 71 percent was under age 21.

21.     Family planning clinics that are approved by the Texas State Department of Public Health and are under the direction of a physician are eligible to participate in the Medicaid program.

22.     Planned Parenthood is an approved participant in the Texas Medicaid program.

23.     Planned Parenthood executed a Texas Medicaid Provider Agreement with the State of Texas, by which Planned Parenthood agreed to "abide by the policies and procedures of Medicaid, published regulations, and the information and instructions in manuals, bulletins, and other instructional material furnished to the provider." 2009 Texas Medicaid Provider Procedures Manual, "Introduction."

24.    Upon submission of proper documentation (claim) to the State of Texas via the TMHP system, Planned Parenthood is paid by the United States Government and/or the State of Texas government for services and products delivered in accordance with the pertinent rules and regulations. See 25 TEX. ADMIN. CODE § 56.7 (2008).

25.    "Participation in the Medicaid and other United States Government programs charges all providers and persons, including managed care organizations, with knowledge of the federal and state laws that govern Medicaid or other United States Government programs during the period of time in which the United States Government program was billed. This includes knowledge of the Texas Medicaid Provider Procedures Manual, United States Government Health and Human Services [herein "HHS"] program and procedure manuals, and other official program manuals and publications, including all official interpretations or explanations given to the provider or person regarding the services that they provide." Title 1, TEXAS ADMINISTRATIVE CODE §371.1615(a).

26.    A Medicaid or other HHS provider is responsible for the provider's own actions and omissions, as well as for the actions and omissions of the provider's employees, contractors, and agents. This responsibility, however, does not absolve a provider's employees, contractors, and agents from their own personal responsibility and liability. *Id.*, §371.1615(c).

27.    Planned Parenthood was required to keep fiscal and clinical records for all services provided pursuant to Texas Administrative Code (25 TEX. ADMIN. CODE § 56.8).

28.    "Recipients of funds administered through the state's health and human services programs, including the Medicaid program, have an ethical and legal duty to insure the integrity of their dealings with such programs. This duty includes an obligation to take measures to detect and prevent fraudulent, abusive, and wasteful activities, as well as circumstances that result in

the incorrect payment of funds, and to report those activities when discovered."   *See* HHSC Office of Inspector General, "Provider Self-Reporting Guidance," Oct. 26, 2009 (citation omitted) (available online)

### Section 1115(a) demonstration waiver program – Texas Women's Health Program

29.     Effective December 21, 2006, the Texas HHSC received federal approval ("waiver") to implement a Section 1115(a) demonstration waiver program called the Texas Women's Health Program ("WHP").  The WHP demonstration waiver program commenced on January 1, 2007, and will end December 31, 2011. All enrolled Medicaid providers that can perform family planning services within their scope of practice are eligible to provide services under WHP, and there is no separate provider enrollment process.

30.     Pursuant to the terms of the enabling statute and the waiver,[1] WHP provides low-income women with family planning exams, related health screenings, and birth control. http://www.hhsc.state.tx.us/Help/WHP/index.shtml.  WHP patients have income levels too high to qualify for full Medicaid services.  WHP eligibility is limited to Texas-resident U.S. citizens and legal immigrants from the ages of 18 to 44 (i.e., pre-menopausal patients).  Since WHP is for family planning care, applicants must not be pregnant, seeking pregnancy, sterile, infertile, or unable to get pregnant due to medical reasons.

31.     Eligible participants may receive one family planning examination each year, which may include screening for breast and cervical cancer, diabetes, sexually-transmitted diseases, high blood pressure, and family planning counseling and education. Participants may also receive chemical and barrier forms of birth control, and methods to prevent pregnancy (tubal ligations or Essure), excluding emergency birth control.  Follow-up family planning visits may only be paid

---

[1]  S.B. 747, 79th Legislature, Regular Session, 2005.

by WHP if such visits are related to the selected method of birth control. "WHP does not cover the costs of treatment for any medical conditions. If a women's health provider indentifies a health problem such as a sexually transmitted disease or diabetes, the provider must refer her to another physician or clinic that can treat her." HHSC, *Medicaid Women's Health Program Implementation Report*, December 2008 at 6.

32.     In 2007, Planned Parenthood claims to have provided medical services and reproductive health services to individuals participating in 82,513 patient visits from which Planned Parenthood received program service revenue in the amount of $9,230,230. *See* Planned Parenthood IRS Form 990 2007, p.1, l.2. A substantial amount of said revenue was earned by provision of medical services by Planned Parenthood billed to Medicaid and WHP programs and thus paid for by from the United States Government and/or the State of Texas government. On information and belief, in SFY2008, Planned Parenthood received $1,950,669 in WHP reimbursements from the United States Government and/or the State of Texas government for treating 9,029 patients with 66,687 procedures. In SFY2009, Planned Parenthood received $3,071,727 in WHP reimbursements from the United States Government and/or the State of Texas government, an approximate 37 % increase in revenues, although the number of patients rose only about ten percent to 10,137 and the number of procedures rose only slightly to 68,488.

33.     Planned Parenthood, including the Bryan, Texas, Health Center, also periodically received revenue from the United States Government and/or the State of Texas government from the state-administered Social Services Block Grant, or Title XX of the Social Security Act, sec. 2001. 42 U.S.C. § 1397. In 2007, 2008, and 2009, Texas allocated a portion of its Title XX block grant funds for family planning services. Title XX pays for direct medical services on a fee-for-service basis for services and supplies that have been provided to eligible clients. *See* Texas

Dept. of State Health Services, FY09 Title V, X, and XX Family Planning Policy Manual at III-3. However, WHP funding remains the primary source of coverage for clients, and contractors must verify an applicant's WHP eligibility before billing services to Title XX. *Id.* at III-4.

34.     From at least January 2007 to the present and continuing, Planned Parenthood, acting through its officers, agents and employees, Melaney Linton, Bonnie Smith, Laurie McGill, Sandra Smolensky, Dyann Santos, and others, combined, conspired, and agreed together and with each other to defraud the United States Government and the State of Texas government by knowingly submitting and causing to be submitted to agencies of the United States Government, the State of Texas government, and/or their designated intermediaries, including TMHP, false, fraudulent and/or ineligible claims for reimbursement, which Planned Parenthood knew were false, exaggerated and/or overstated when made. This was principally done by knowingly preparing and submitting claim forms seeking payment from WHP for clients that were not eligible for WHP coverage because they were not seeking or receiving medical services for family planning, as more specifically described below.

### COUNT I

**Fraudulent Charting in Order to Bill**
**WHP for Non-Family Planning Services/**
**Knowing Concealment and/or Avoidance of Obligation to Pay**
**Money to the United States Government and the State of Texas Government**
**31 U.S.C.A. § 3729(a)(1)(A)-(C), (G); Tex. Hum. Res. Code Ann. § 36.002(1)-(2), (9), (12)**

35.     Plaintiff/Relator hereby incorporates and re-alleges as fully as if set forth herein all prior allegations above.

36.     Through the acts described above and herein, Planned Parenthood and their agents and employees knowingly presented and caused to be presented to the United States Government and the State of Texas government participating in the Medicaid programs false and fraudulent

claims, records, and statements in order to obtain reimbursement for health care services provided under Medicaid.

37.    The State of Texas' Title XX funding for family planning services was exhausted for a period of several months in 2007, 2008, and 2009, beginning in approximately the month of May in each of those years, and no funds were available pursuant to that program until the contract year began again in September of each of those years.[2]

38.    As one consequence of this yearly exhaustion of Title XX funding, Planned Parenthood, through its Chief Operating Officer Melaney Linton, Vice President of Medical Services Bonnie Smith; its Regional Director of Medical Services Sandra Smolensky; its Regional Director of Medical Services Dyann Santos, and others, imposed burdensome and unrealistic financial expectations and requirements upon Ms. Johnson and its other personnel knowing that such burdensome and unrealistic financial expectations would result in false, fraudulent and/or ineligible claims for reimbursement by Planned Parenthood.

39.    All management personnel for Planned Parenthood were required to attend monthly management meetings at the Fannin St. location in Houston, Texas.   Ms. Johnson began attending these meetings when she became Health Center Director for the Bryan, Texas, Center in September 2007.  Ms. Johnson and other Planned Parenthood directors and staff received oral

---

[2] *See* HHSC, *Medicaid Women's Health Program Implementation Report*, December 2008 at 4:

> DSHS contracts with public or private non-profit agencies across the state to provide family planning services using Titles V, X, and/or XX funds.  Contract award amounts are determined through a competitive procurement process. Not all contractors receive each funding source.... The amount available for contracts is limited by the total dollars awarded to the state for family planning services, and generally meets less than 20 percent of the state's need for family planning services.

and written instructions from Melaney Linton, Bonnie Smith, Laurie McGill, Sandra Smolensky, and Dyann Santos at these meetings on new protocols and procedures, and were required in turn to brief their own staff on these oral and written instructions.

40. At several of these management meetings, the continued employment of Ms. Johnson and other staff members was threatened if Ms. Johnson and these other staff members failed to enhance revenues to Planned Parenthood by raising the number of billable client files. In an apparent move to fulfill these threats, Planned Parenthood laid off 13 workers, or 5% of its work force, in 2009. Ms. Johnson and other Planned Parenthood personnel were told, "We have to keep these people as patients." They were to make every effort to "Turn every call and visit into a revenue-generating client."

41. Beginning in at least 2007 to date, Planned Parenthood initiated a scheme of fraudulent billing to offset its operating losses. This fraudulent billing was accomplished by assigning a fraudulent purpose for a patient visit that would otherwise be non-billable.

42. For example, a woman with an infection would not be eligible for a follow-up examination paid by WHP, since the exam must be with regard to family planning services, not general obstetrical care.

43. Infection patients were initially required to self-pay to Planned Parenthood for such charges. But clients would, by and large, not pay to Planned Parenthood the $150 - $300 self-pay charge if they were not qualified as WHP patients. As instructed by Planned Parenthood, Ms. Johnson and others falsely notated the patient's chart with services not, in fact, provided to the patient so as to create an otherwise non-reimbursable service into a reimbursable family planning product or service.

13

44. At instructions of Planned Parenthood, the Planned Parenthood staff person who had made the fraudulent notation in the patient chart would thereupon notify Planned Parenthood employee Stephanie Shetler, of the false chart notation, and Planned Parenthood employee Stephanie Shetler would further document the fraud by making an additional false notation reflecting a family planning purpose, such as, "Discussed birth control with patient – patient decided to retain current method." Planned Parenthood's Center would then bill the examination to the WHP program, as well as non-family planning services provided in conjunction with the family planning examination such as STI screenings.

45. The acts of Planned Parenthood and its officers and employees, as described herein, constituted the knowing presentment of false or fraudulent claims for payment or approval, and/or the knowing making and/or using of false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(A) and (B) respectively and TEX. HUM. RES. CODE ANN. § 36.002(1), (2) and (4)(B), and/or conspiracy to commit violations of said provisions in violation of 31 U.S.C. § 3729(a)(1)(C) and TEX. HUM. RES. CODE ANN. § 36.002(9).

46. Through the acts described above and otherwise, Planned Parenthood and its agents and employees knowingly made, used, and/or caused to be made or used false records and statements to conceal, avoid, and/or decrease Planned Parenthood's obligations to repay money to the United States Government and/or the State of Texas government that Planned Parenthood improperly and/or fraudulently received, in violation of 31 U.S.C. § 3729(a)(1)(G) and TEX. HUM. RES. CODE ANN. § 36.002(12). Planned Parenthood also failed to disclose to the United States Government and/or the State of Texas government material facts that would have resulted

14

in substantial repayments by it to the federal and state governments, in violation of 31 U.S.C. § 3729(a)(1)(G) and Tex. Hum. Res. Code Ann. § 36.002(12).

47.    The United States, its fiscal intermediaries, and the State of Texas government, unaware of the falsity of the records, statements, and claims made or submitted by Planned Parenthood and its agents and employees paid and continue to pay Planned Parenthood for claims that would not be paid if the truth were known.

48.    The United States, its fiscal intermediaries, and the State of Texas government, unaware of the falsity of the records, statements, and claims made or submitted by Planned Parenthood and its agents and employees – or of its failure to disclose material facts which would have reduced government obligations – have not recovered Medicaid funds that would have been recovered otherwise.

49.    By reason of Planned Parenthood's false records, statements, claims and omissions, the United States Government and the State of Texas government have been damaged in the amount of many thousands of dollars in Medicaid funds.  The precise number of such false claims as well as the precise amount of damage and loss caused the United States and the State of Texas is presently undetermined, but, upon information and belief, is estimated to be 3500 with a value of $787,500.00.

## COUNT II

**Fraudulent Billing of WHP for Non-Family Planning Services/
Knowing Concealment and/or Avoidance of Obligation to Pay
Money to the United States Government and the State of Texas Government
31 U.S.C.A. § 3729(a)(1)(A), (C), and (G);
Tex. Hum. Res. Code Ann. § 36.002(1)-(2), (9), and (12)**

50.    Plaintiff/Relator hereby incorporates and re-alleges as fully as if set forth herein all prior allegations.

51.     Upon the inauguration of WHP, Planned Parenthood billed all medical services to the WHP program, regardless of whether said services related to family planning purposes. Planned Parenthood knew or reasonably should have known that such billing for non-program services was unlawful and in breach of its Provider Agreement.

52.     At some point in late 2008 or early 2009, Ms. Johnson's supervisors acknowledged the improper billing to Ms. Johnson and other Planned Parenthood staff and yet directed Planned Parenthood affiliated clinics, including the Bryan, Texas, Health Center, not to disclose to the United States Government and/or the State of Texas government these improper billings, but rather that family planning be the documented purpose for every available visit, in order to maximize the available billings to the Medicaid waiver program in the first instance and Title XX alternatively.

53.     Upon the acknowledgment of the fraudulent billing of non-family planning services to WHP, Planned Parenthood was obligated by applicable regulatory law and contract provisions to notify HHSC and other state and federal agency authorities that overbilling had occurred and to reimburse or credit said authorities in the amount of the overbilling. In spite of said obligation, Planned Parenthood failed and/or neglected and/or refused to notify HHSC and other authorities of the overbilling and to reimburse or credit said authorities in the amount of the overbilling.

54.     The acts of Planned Parenthood and its officers and employees, as described herein, constituted the knowing presentment of false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A) and TEX. HUM. RES. CODE ANN. § 36.002(1) and (2), and the concealment and/or improper avoidance of an obligation to pay or transmit money to the United States government in violation of 31 U.S.C. § 3729(a)(1)(G) and the State of Texas under TEX. HUM. RES. CODE ANN. § 36.002(12), and or conspiracy to commit violations of these

provisions in violation of 31 U.S.C. § 3729(a)(1)(C) AND TEX. HUM. RES. CODE ANN. § 36.002(9).

55.     By reason of Planned Parenthood's false records, statements, claims and omissions, the United States Government and the State of Texas government have been damaged in the amount of many thousands of dollars in Medicaid funds.  The precise number of such false claims as well as the precise amount of damage and loss caused the United States and the State of Texas is presently undetermined, but, upon information and belief, is estimated to be 8396 with a value of $756,000.00.

**COUNT III**
**Fraudulent Billing of WHP for Non-Eligible and Non-Performed Laboratory Tests**
**Knowing Concealment and/or Avoidance of Obligation to Pay**
**Money to the United States Government and the State of Texas Government**
**31 U.S.C.A. § 3729(a)(1)(A), (C), and (G);**
**TEX. HUM. RES. CODE ANN. § 36.002(2), (9), and (12)**

56.     Plaintiff/Relator hereby incorporates and re-alleges as fully as if set forth herein all prior allegations.

57.     Until 2009, Planned Parenthood billed positive pregnancy tests to WHP, in spite of the fact that a positive pregnancy test rendered the patient ineligible for WHP coverage. Moreover, staff of the Bryan, Texas, Health Center were never instructed by Planned Parenthood supervisors not to bill subsequent medical services to the waiver program in spite of a positive pregnancy test. Bryan, Texas, Health Center staff were also never instructed by Planned Parenthood supervisors not to bill annual examinations to WHP despite a positive pregnancy test.

58.     Although Planned Parenthood required Ms. Johnson and other center managers to audit only ten percent of their patient files, Ms. Johnson initially monitored one hundred percent of her patient files.  Ms. Johnson and other Center managers sent monthly chart audit forms to the Planned Parenthood's Quality Assurance Manager, Brooke McFadden.  However, the

implementation of electronic charting in summer of 2008 made performing the auditing task in the manner expected of her by her supervisors more difficult, because the electronic charting system included a time stamp and notation of the user making the alteration, making after-the-fact alteration of records traceable. Nonetheless, she continued to audit approximately 60% of patient files

59.     HHSC personnel came annually to her clinic in late November to audit the billing by comparing the clinic's billing to its charts. Because the visits were announced in advance, with a list of categories of charts HHSC personnel wished to audit, Planned Parenthood's staff was instructed to and did provide charts that had been "fixed" – *i.e.*, charts that Planned Parenthood's staff had gone through to conceal fraudulent billings and to ensure that required documentation, especially with regard to parental consent and non-coercion, was included in each file. Ms. Johnson and other Planned Parenthood personnel were instructed by Planned Parenthood managers, including Bonnie Smith, Sandra Smolensky and Dyann Santos, to "make it right" by fixing charts before auditors arrived.[3]

60.     As an example of such "chart-fixing," Ms. Johnson had access to a computer spreadsheet that would show all laboratory tests ordered for patients in all Planned Parenthood health centers.

---

[3]     *See* Ex. "A", Planned Parenthood Medicaid Provider Agreement, § I.1.2.3, at 8-2:

> As required by 42 C.F.R. § 431.107, Provider agrees to keep any and all records necessary to disclose the extent of services provided by the Provider to individuals in the Medicaid program and any and all information relating to payments claimed by the Provider for furnishing Medicaid services. Provider also agrees to provide, on request, access to records required to be maintained under 42 C.F.R. § 431.107 and copies of those records free of charge to TDH, TDH's agent, the Texas Health and Human Services Commission, the Texas Attorney General's Medicaid Fraud Control Unit, and/or the United States Department of Health and Human Services. The records must be retained in the form in which they are regularly kept by the Provider for five (5) years from the date of service… or until all audit or audit exceptions are resolved, whichever period is longest.

On numerous occasions, the laboratory work ordered for STI screenings would be billed as if the tests had been conducted, but on an in-house audit the tests would show as "open/pending" – *i.e.*, not performed. These laboratory test orders would be deleted, but the billing was left charged, and no reimbursement was provided to the United States Government or the State of Texas government by Planned Parenthood for the billed, but unperformed services. At one management meeting, Planned Parenthood supervisors, including Bonnie Smith and Sandra Smolensky, informed Ms. Johnson and others that syphilis laboratory tests had been "cleared" from the record but that no reimbursement had been or would be provided to HHSC and that with regard to such fraudulent billings "sometimes that happens, we really should be sending back a refund but it's such a hassle we try not to do that."

61.    Upon the discovery of the fraudulent billing of non-family planning services and non-performed laboratory tests to WHP, Planned Parenthood was obligated by to notify HHSC and other state and federal agency authorities that overbillings had occurred and to reimburse or credit said authorities in the amount of such overbillings. In spite of said obligations Planned Parenthood failed and/or refused to notify HHSC and other authorities of such overbillings and to reimburse or credit said authorities in the amount of such overbillings.

62.    The acts of Planned Parenthood and its officers and employees, as described herein, constituted the knowing presentment of false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A) and TEX. HUM. RES. CODE ANN. § 36.002(1) and (2) and the concealment and/or improper avoidance of an obligation to pay or transmit money to the United States government and/or the State of Texas government in violation of 31 U.S.C. § 3729(a)(1)(G) and TEX. HUM. RES. CODE ANN. § 36.002(12), and or conspiracy to commit violations of these provisions in violation of 31 U.S.C. § 3729(a)(1)(C) and TEX. HUM. RES.

CODE ANN. § 36.002(9).

63.     By reason of Planned Parenthood's false records, statements, claims and omissions, the United States Government and the State of Texas government have been damaged in the amount of many thousands of dollars in Medicaid funds. The precise number of such false claims as well as the precise amount of damage and loss caused the United States and the State of Texas is presently undetermined, but, upon information and belief, is estimated to be 420 with a value of $21,000.00.

WHEREFORE, Plaintiff/Relator Abby Kristen Johnson respectfully requests that this Court enter judgment against Defendant Planned Parenthood of Houston and Southeast Texas, Inc., as follows:

(a)     That Defendant Planned Parenthood of Houston and Southeast Texas, Inc., cease and desist from violating 31 U.S.C. § 3729 *et seq.*

(b)     That the Court enter judgment against Defendant Planned Parenthood of Houston and Southeast Texas, Inc., in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant Planned Parenthood of Houston and Southeast Texas, Inc.'s actions, as well as a civil penalty against Defendant Planned Parenthood of Houston and Southeast Texas, Inc., of $11,000 for each violation of 31 U.S.C. § 3729.

(c)     That Plaintiff/Relator Abby Kristen Johnson be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d).

(e)     That Plaintiff/Relator Abby Kristen Johnson be awarded all costs and expenses of this action, including her attorney's fees.

(f)     That this Court award such other and further relief to the United States of America and/or to Plaintiff/Relator Abby Kristen Johnson as it deems just and proper.

## JURY DEMAND

Pursuant to F.R.C.P. 38, Plaintiff/Relator Abby Kristen Johnson hereby demands trial by jury of all issues so triable.

DATED:  This 9th day of June, 2010.

COUNSEL:


__/s/Joshua W. Carden_____
Joshua W. Carden, Esq.
Texas Bar No. 24050379
EGGLESTON FLOWERS & KING, L.L.P.
On the Square, Lawyers Building
102 Houston Avenue
Weatherford TX  76086
Tel.:  817-596-4200
Fax:  817-596-4269
joshua@efklaw.com

Steven H. Aden, Esq.*
ALLIANCE DEFENSE FUND
801 G  St., N.W., Suite 509
Washington, DC  20001
Tel.:  202.393.8690
Fax:  202.347.3622
saden@telladf.org

Michael J. Norton, Esq.*
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers Green Cir., Ste. 1000
Greenwood Village CO 80111
303-796-2626 Business
mjnorton@bfw-law.com

Attorneys for Plaintiff/Relator
ABBY KRISTEN JOHNSON

*motions for admission pro hac vice to be filed electronically