UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA AND | § | |
| THE STATE OF TEXAS EX REL. | § | |
| ABBY KRISTEN JOHNSON, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-03496 |
| | § | |
| PLANNED PARENTHOOD OF | § | |
| HOUSTON AND SOUTHEAST | § | |
| TEXAS, INC., | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

**I.    INTRODUCTION**

Pending before the Court is the defendant's, Planned Parenthood Gulf Coast f/k/a Planned Parenthood of Houston and Southeast Texas, Inc. ( the "defendant"), Rule 12(b)(1) motion to dismiss (Dkt. No. 43)[1]. The plaintiff, Abby Kristen Johnson ("Johnson"), has filed a response in opposition to the defendant's motion (Dkt No. 47) and the defendant has filed a reply (Dkt. No. 53). After having carefully considered the motion, response, reply, the pleadings and the applicable law, the Court determines that the defendant's 12(b)(1) motion to dismiss should be GRANTED.

**II.    FACTUAL BACKGROUND**

From September 2001 through October 2009, Johnson worked as a health care assistant, community service specialist and health care director at the defendant's Bryan Health Center location in Bryan, Texas. The defendant, a 501(c)(3) exempt, Texas non-profit corporation, is

---

[1] The defendant has also filed a motion to dismiss Johnson's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (Dkt. No. 44). However, because its present motion calls into question this Court's very authority to hear this case, the Court must first address its 12(b)(1) motion before resolving, if needed, its 12(b)(6)attack on the sufficiency of Johnson's complaint.

1

engaged in the business of providing reproductive health care and educational services to the general public, including, but not limited to, distributing contraceptive devices, testing and treating sexually transmitted diseases, testing and counseling unplanned pregnancies, and providing a full range of abortion services.

On June 9, 2010, Johnson, acting as relator on behalf of the United States and the State of Texas, commenced an action in the U.S. District Court for the Eastern District of Texas, Sherman Division, for damages against the defendant due to its alleged fraudulent billing practices in violation of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* and the Texas Medicaid Fraud Prevention Act ("TMFPA"). *See* Tex. Hum. Res. Code §§36.001 *et seq.* Johnson generally alleges that the defendant repeatedly filed various, false, fraudulent, and/or ineligible claims for Medicaid reimbursements with both state and federal billing agencies. Specifically, she contends that the defendant: (a) falsely billed the Texas Women's Health Program ("Texas WHP") for non-reimbursable procedures and services rendered during a client visit when the primary purpose of the visit was for a purpose other than contraceptive management as required by the Texas WHP; (b) falsely billed the Texas WHP for laboratory tests that were never performed and supported such false billings with false notations in client charts made to appear reimbursable; (c) falsely billed non-contraceptive management-related procedures and services by making false notations in client charts and not referring those clients to another physician or clinic for treatment; (d) filed 87,075 or more false claims with the Texas WHP from which it wrongfully received and retained reimbursements totaling at least $5,701,055; and (e) acknowledged to Johnson and other employees that it would conceal from the Texas WHP that it had received improper reimbursements from it and would retain such reimbursements.

On July 30, 2009, however, prior to Johnson's action being initiated, Karen Reynolds, acting as relator on behalf of the United States and the State of Texas, filed a *qui tam* suit against the defendant for treble damages and civil penalties also arising from the defendant's alleged fraudulent billing activity in violation of the FCA and the TMFPA. The matter, entitled *United States ex rel. Karen Reynolds v. Planned Parenthood of Houston and Southeast Texas, Inc., ex al.,* Case No. 9:09-cv-00124-RC, is currently pending in the U.S. District Court for the Eastern District of Texas. In her Complaint, Reynolds alleges FCA and TMFPA violations against the defendant arising out of the following conduct: (1) billing for medical services not rendered; (2) billing for unnecessary medical services; (3) creating false information relative to billing in medical records; (4) creating false documentation in an attempt to demonstrate compliance with various governmental program requirements; and (5) conspiring to violate the FCA.

On or about August 24, 2010, this case was transferred, *sua sponte,* to the U.S. District Court for the Southern District of Texas and assigned to this Court. On December 20, 2011, Johnson filed her Second Amended Complaint under seal in this Court. On March 9, 2012, Johnson's Original Complaint and her Second Amended Complaint were unsealed pursuant to the Court's orders. The defendant now moves to dismiss Johnson's action alleging that the Court lacks subject matter jurisdiction over the case because the action is barred under the FCA and the TMFPA's "first-to-file" rule.

### III. STANDARD OF REVIEW

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3rd Cir. 1992) (citing *Rubin v. Buckman*, 727

F.2d 71, 72 (3d Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party."). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.") In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is permitted to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986).

IV.     ANALYSIS AND DISCUSSION

Here, the defendant moves for a dismissal for lack of subject matter jurisdiction pursuant to 31 U.S.C § 3730(b)(5), alleging that this action is jurisdictionally barred under the FCA's and the TMFPA's "first-to-file" jurisdictional statutes because it alleges the same essential facts and material elements of fraud already alleged in a pending *qui tam* action filed by another relator, Karen Reynolds, in the Eastern District of Texas one year prior to Johnson's suit.  It contends that Johnson's Original Complaint is the appropriate complaint to compare with Reynolds' Original Complaint for judging the applicability of the first-to-file jurisdictional bar.  It argues that pursuant to § 3730(b)(5) of the FCA later-filed actions that allege the "same material or essential elements" of fraud that are alleged in a pending action are jurisdictionally barred.  As a consequence, it maintains that because Johnson's complaint alleges the same essential facts and material elements of fraud that are alleged in Reynolds' complaint, Johnson's later-filed suit is parasitic to Reynolds' previously-filed suit and is jurisdictionally barred by § 3730(b)(5) and the TMFPA's  first-to-file bar.  Accordingly, it argues that Johnson's *qui tam* action is duplicative, adds nothing new, provides no value and should be dismissed as jurisdictionally barred.

Johnson, in contrast, argues that the first-to-file bars delineated by the FCA and/or the TMFPA do not divest this Court of subject matter jurisdiction over her complaint because the frauds alleged in the Reynolds' complaint are "substantially and fundamentally  different" from the frauds alleged in her complaint.  She also avers that the Reynold's complaint is so devoid of factual detail that it could not have possibly placed the government on notice of the frauds alleged by her.  Therefore, she contends that her complaint is not jurisdictionally barred and the defendant's motion to dismiss should be denied.  Alternatively, Johnson requests that this Court

5

defer ruling on the defendant's motion to dismiss until the court in the Eastern District has ruled upon the defendant's motion to dismiss Reynolds' Third Amended Complaint.

The FCA prohibits federal courts from adjudicating certain actions. *See* 31 U.S.C. § 3730. It imposes a "first-to-file" prerequisite for suits initiated by private individuals.[2] Section 3730(b)(5) expressly provides, in relevant part, that "[w]hen a person brings an action under [the *qui tam* provision of the Act], no person . . . may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The goal behind Congress' implementation of this provision is to "discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud." *United States ex rel. Branch Consultants v. Allstate Ins. Co. et al.*, 560 F.3d 371, 377 (5th Cir. 2009).

The test for determining the applicability of § 3730(b)(5)'s first-to-file bar has been stated by the Fifth Circuit as follows:

> [T]he applicability of §3730(b)(5) should be determined under an "essential facts" or material elements" standard. Accordingly, as long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, the § 3730(b)(5) jurisdictional bar applies.

*United States et rel. Branch Consultants v. Allstate Ins. Co.,* 560 F3d. 371, 377 (5th Cir. 2009). To this end, "[a] later case need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar. Rather, if a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details." *United States ex. rel St. John LaCorte v. SmithKline Beecham Clinical Labs, Inc.,* 149 F.3d 227, 232 - 33 (3d Cir. 1998). "Accordingly,

---

[2] The purposes of the FCA and the TMFPA are essentially the same—to create liability for entities that purposefully make fraudulent claims to the government in an effort to induce payment. *See* 31 U.S.C. § 3730(b)(5); Tex. Hum. Res. Code §§36.106. As such, TMFPA's first-to-file bar operates similar to the FCA's first-to-file bar. In the case *sub judice*, the parties do not address any differences between the Acts that would call for separate examinations. Therefore, reference to the FCA is appropriate to resolve the issues presented.

as long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies." *Branch,* 560 F.3d at 378. Furthermore, "a relator cannot avoid section 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements of a fraud claim" brought against the same defendant in an earlier-filed complaint. *Branch*, 560 F.3d at 378.

Application of the first-to-file bar mandates that a side-by-side comparison of the relevant complaints be performed. *In re Natural Gas Royalties ex rel. United States v. Exxon Co.*, 566 F.3d 956, 964 (10th Cir. 2009); *see also LaCorte*, 149 F.3d at 234. The Fifth Circuit has held that when evaluating subject matter jurisdiction in the context of the first-to-file bar, the original complaint, rather than the amended complaint, must be considered. *See United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011) (reasoning that "[ i]f [relator' original] complaint did not establish jurisdiction, it should have been dismissed; his amendments cannot save it." *Id.*; *see also Branch*, 782 F. Supp. 2d at 264.

In accordance with the aforementioned controlling authority, this Court finds that Johnson's Original Complaint filed on June 10, 2010, is the appropriate complaint to compare to Reynolds' Original Complaint filed on July 30, 2009, in order to determine whether § 3730(b)(5)'s jurisdictional bar applies. A side-by-side comparison of the material allegations contained in both Johnson and Reynold's Original Complaints is set forth below:

| Allegations | Reynolds' Action | Johnson's Action |
|---|---|---|
| **The defendant had a corporate policy of seeking to increase its revenues to maximize financial payments made by Medicaid.** | "Pursuant to Defendants' corporate policies and procedures, the health clinics were required to constantly increase their 'pay-per-visit' goals which were the bills charged to Medicaid for every patient visit. Extensive and ongoing training, as well as dynamic policy adjustment, were provided and implemented by Defendants' corporate administration in order to ensure that the health clinics, their management and personnel, were all constantly maximizing the financial payments and grants made by Medicaid, either directly or through Texas' programs." ¶16; *see also* ¶¶ 17-18. | At the defendant's management meetings at the corporate office, directors and staff received instruction to "enhance revenues to Planned Parenthood . . . ¶ 40. "Johnson and other Planned Parenthood personnel were told, 'We have to keep these people as patients.' They were to make every effort to 'Turn every call and visit into a revenue-generating client.'" ¶40; *see also* ¶ 38 (The defendant "imposed burdensome and unrealistic financial expectations and requirements upon Ms. Johnson and its other personnel knowing that such burdensome and unrealistic financial expectations would result in false, fraudulent and/or ineligible claims for reimbursement by Planned Parenthood"). |
| **The defendant altered patient charts to reflect that certain services had been provided when in fact they had not been provided.** | "Defendants repeatedly instructed and/or trained their personnel to change, alter, add, and/or redact information in patients' charts before submitting billing codes in order to reflect that certain services had been provided when, in fact, the patients' charts did not originally indicate that those same services had actually been provided." ¶ 37; *see also* ¶ 38. | "As instructed by Planned Parenthood, Ms. Johnson and others falsely noted the patient's chart with services not, in fact, provided to the patient so as to create an otherwise non-reimbursable service into a reimbursable family planning product or service." ¶ 43.<br><br>"At instructions of Planned Parenthood, the Planned Parenthood staff person who had made the fraudulent notation in the patient chart would thereupon notify Planned Parenthood employee Stephanie Shelter, of the false chart notation, and [she] would further document the fraud by making an additional false notation reflecting a family planning purpose . . . ." ¶ 44. |

8

| | | |
|---|---|---|
| **The defendant submitted false claims to the government by improperly billing for services, which were not needed, not actually performed, or not eligible for reimbursement.** | "Defendants repeatedly instructed and/or trained their personnel to enter billing codes for certain services even when the patient's chart information did not indicate that those same certain services had actually been rendered." ¶ 22.<br><br>"Defendants repeatedly instructed and/or trained their personnel to enter billing codes for certain services regardless of whether a patient needed, requested, or warranted those same services." ¶32; *see also* ¶18. | "Defendant "knowingly prepare[ed] and submitt[ed] claim forms seeking payment from WHP for clients that were not eligible for WHP coverage because they were not seeking or receiving medical services for family planning . . . ." ¶34<br><br>"Upon the inauguration of WHP, Planned Parenthood billed all medical services to the WHP program, regardless of whether said services related to a family planning purpose. Planned Parenthood knew or reasonably should have known that such billing for non-program services was unlawful and in breach of its Provider Agreement." ¶51.<br><br>"Ms. Johnson's supervisors acknowledged the improper billing to Ms. Johnson . . . and yet directed Planned Parenthood affiliated clinics . . . not to disclose to the United States Government and/or the State of Texas government these improper billings, but rather that family planning is the documented purpose for every available visit . . . ." ¶52. |
| **The defendant altered patient chart information after billing codes had been submitted to prepare for audits, thereby falsely representing compliance in order to participate as a contracted provider in federal and/or state Medicaid** | "Defendants repeatedly instructed and/or trained their personnel to change, alter, add, and/or redact information in patients' charts after billing codes had been submitted in order to prepare for internal quality assurance audits . . . ." ¶39; *see also* ¶19; ¶40-43. | "HHSC personnel came annually to [Johnson's] clinic in late November to audit the billing by comparing the clinic's billing to its charts. Because the visits were announced in advance, with a list of categories of charts HHSC personnel wished to audit, Planned Parenthood's staff was instructed to and did provide charts that had been 'fixed'—*i.e.,* charts that Planned Parenthood's staff had gone through to conceal fraudulent billings and to ensure that required documentation, |

9

| | | |
|---|---|---|
| programs. | | especially with regard to parental consent and non-coercion, was included in each file." ¶59; *see also* ¶60 (example of "chart-fixing"). |
| **The defendant's actions constituted conspiracy to defraud the federal government by knowingly submitting false claims and/or knowingly misrepresenting false compliance with federal programs.** | "Defendants combined, conspired, and agreed together to defraud the U.S. Government by knowingly submitting false claims to the U.S. Government, and to the Texas Government, and/or knowingly misrepresenting compliance with funding program requirements, for the purpose of obtaining payment and/or grant funding." ¶52. | "From at least January 2007 to the present and continuing, Planned Parenthood, acting through its officers, agents, and employees . . . combined, conspired, and agreed together and with each other to defraud the United States Government and the State of Texas government by knowingly submitting and causing to be submitted to agencies of the United States Government, the State of Texas government, and/or their designated intermediaries, including TMHP, false fraudulent and/or ineligible claims for reimbursement, which Planned Parenthood knew were false, exaggerated and/or overstated when made." ¶34. |

A side-by-side comparison of Reynolds and Johnson's complaints demonstrates that both complaints allege substantially similar facts: (1) both actions allege a fraudulent billing structure for women's health services designed to procure the maximum payments available under Medicaid, including the Texas Women's Health Program; (2) both actions focus on the defendant's alleged fraudulent scheme of improperly billing the government for medical services that were not warranted, not rendered, or not eligible for reimbursement; (3) both actions allege that the defendant altered patient charts to reflect that certain medical services had been provided when they had not; (4) both actions allege that the defendant falsely represented its compliance with government programs; and (5) both actions allege that the defendant's actions constitute a

conspiracy to defraud the federal government by knowingly submitting false claims in violation of the FCA and/or knowingly misrepresenting compliance with federal programs. Although Johnson's complaint contains allegations of a fraudulent scheme under an additional governmental program and incorporates additional factual details not mentioned in Reynolds' complaint, it, nevertheless, alleges the same "essential facts" and "material elements" of fraud. *See LaCorte*, 149 F.3d at 235 - 37 (original *qui tam* action alleging that defendant fraudulently overcharged the government for blood testing barred subsequent suits that alleged new facts detailing more precisely how defendant overcharged the government). Because Johnson's Original Complaint contains the same "essential facts" or "material elements" of fraud described in the pending *Reynolds*' action, Johnson's action is barred by § 3730(b)(5)'s first-to-file bar. Accordingly, this Court lacks subject matter jurisdiction over the instant action and, therefore, this case must be dismissed.

V.     **CONCLUSION**

Based on the foregoing, the Court determines that the defendant's motion to dismiss is GRANTED.

It is so **ORDERED.**

Signed on this 29th day of March, 2013.

_____
Kenneth M. Hoyt
United States District Judge